JONATHAN E. NUECHTERLEIN
General Counsel
COLIN HECTOR
THOMAS J. WIDOR
NIKHIL SINGHVI
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, DC  20580
Telephone:  (202) 326-3376 (Hector)
Telephone: (202) 326-3039 (Widor)
Telephone: (202) 326-3480 (Singhvi)
Facsimile: (202) 326-3768
Email: chector@ftc.gov; twidor@ftc.gov;
          nsinghvi@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
JAMES M. MORRISSEY
Assistant Attorney General
350 Main Street, Suite 300A
Buffalo, NY 14202
Telephone: (716) 853-8471

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FEDERAL TRADE COMMISSION and PEOPLE OF THE STATE OF NEW YORK, by ERIC T. SCHNEIDERMAN, Attorney General of the State of New York,<br><br>                    Plaintiffs,<br><br>                    v.<br><br>NATIONAL CHECK REGISTRY, LLC, a New York limited liability company; CHECK SYSTEMS, LLC, a New York limited liability company; INTERCHEX SYSTEMS, LLC, a New York limited liability company; AMERICAN MUTUAL HOLDINGS, INC., a New York corporation; GOLDBERG MAXWELL, LLC, a New York limited liability company; MORGAN JACKSON, | Case No.<br><br>**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |

LLC, a New York limited liability company;
MULLINS & KANE, LLC, a New York
limited liability company; BUFFALO
STAFFING, INC., a New York corporation;
ECAPITAL SERVICES LLC, f/k/a Consumer
Check Reporting, LLC, a New York limited
liability company; JOSEPH C. BELLA, III,
individually and as an officer of one or more of
the Corporate Defendants; DIANE L. BELLA,
individually and as an officer of one or more of
the Corporate Defendants; and LUIS A.
SHAW, individually and as an officer of one or
more of the Corporate Defendants,

Defendants

Plaintiffs, the Federal Trade Commission ("FTC"), by and through its counsel, and The People of the State of New York ("State of New York"), by and through its counsel and Attorney General, for their Complaint allege:

1.       The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and Section 814 of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692*l*, to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, the appointment of a receiver, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FDCPA, 15 U.S.C. §§ 1692-1692p, in connection with their abusive and deceptive debt collection practices.

2.       The State of New York, by and through the Office of the Attorney General, brings this action under N.Y. Executive Law § 63(12) and N.Y. General Business Law Article 22-A, § 349, and Article 29-H, § 602, to obtain damages, restitution, injunctive and equitable relief and penalties of up to $5,000 for each violation of General Business Law Article 22-A.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over the federal law claims in this

action under 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), and 1692*l*.

Subject matter jurisdiction is conferred upon this Court with respect to the supplemental state

law claims of the State of New York by 28 U.S.C. § 1367.

4.      Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1), (b)(2), (c)(1),

(c)(2), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFFS

5.      The FTC is an independent agency of the United States Government created by

statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a),

which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also

enforces the FDCPA, 15 U.S.C. §§ 1692-1692p, which prohibits abusive, deceptive, and unfair

debt collection practices.  The FTC may initiate federal district court proceedings by its own

attorneys to enjoin violations of the FTC Act and the FDCPA, and to secure such equitable relief

as may be appropriate in each case, including rescission or reformation of contracts, restitution,

the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b),

56(a)(2)(A) & 1692*l*(a).  Section 814 of the FDCPA further authorizes the FTC to use all of its

functions and powers under the FTC Act to enforce compliance with the FDCPA.  15 U.S.C.

§ 1692*l*.

6.      Plaintiff State of New York is one of the 50 sovereign states of the United States.

The State of New York, by its Attorney General, is authorized to take action to enjoin (i)

repeated and persistent fraudulent and illegal business conduct under N.Y. Executive Law §

63(12), (ii) deceptive business practices under N.Y. General Business Law ("GBL") § 349 and

(iii) illegal debt collection practices under GBL § 602, and to obtain legal, equitable or other appropriate relief including rescission or reformation of contracts, restitution, the appointment of a receiver, disgorgement of ill-gotten monies, or other relief as may be appropriate.

## DEFENDANTS

7.      Defendant **National Check Registry, LLC**, is a New York limited liability company that has held itself out as doing business at addresses including 665 Main Street, Suite 300, Buffalo, New York 14203.  At times material to this Complaint, National Check Registry has transacted business in this district and throughout the United States.

8.      Defendant **Check Systems, LLC**, is a New York limited liability company that has held itself out as doing business at addresses including 295 Main Street, Suites 120-122, Buffalo, New York 14203 and 268 Main Street, Suites 100-102, Buffalo, New York 14202.  At times material to this Complaint, Check Systems has transacted business in this district and throughout the United States.

9.      Defendant **Interchex Systems, LLC**, is a New York limited liability company that has held itself out as doing business at addresses including 268 Main Street, Suite 100-102, Buffalo, New York 14202.  At times material to this Complaint, Interchex Systems has transacted business in this district and throughout the United States.

10.     Defendant **American Mutual Holdings, Inc.**, is a New York corporation that has held itself out as doing business at addresses including 268 Main Street, Suites 100-102, Buffalo, New York 14202.  At times material to this Complaint, American Mutual Holdings has transacted business in this district and throughout the United States.

11.     Defendant **Goldberg Maxwell, LLC**, is a New York limited liability company that has held itself out as doing business at addresses including 224 Summer Street, Buffalo,

New York 14222.  At times material to this Complaint, Goldberg Maxwell has transacted business in this district and throughout the United States.

12.     Defendant **Morgan Jackson, LLC**, is a New York limited liability company that has held itself out as doing business at addresses including 268 Main Street, Suite 100, Buffalo, New York 14202.  At times material to this Complaint, Morgan Jackson has transacted business in this district and throughout the United States.

13.     Defendant **Mullins & Kane, LLC**, is a New York limited liability company that has held itself out as doing business at addresses including 1673 Hertel Avenue, Buffalo, New York 14216.  At times material to this Complaint, Mullins & Kane has transacted business in this district and throughout the United States.

14.     Defendant **Buffalo Staffing, Inc.**, is a New York corporation that has held itself out as doing business at addresses including 224 Summer Street, Buffalo, New York 14222.  At times material to this Complaint, Buffalo Staffing has transacted business in this district and throughout the United States.

15.     Defendant **eCapital Services, LLC**, formerly known as Consumer Check Reporting LLC, is a New York limited liability company that has held itself out as doing business from 295 Main Street, Suite 115, Buffalo, New York 14202.  At times material to this Complaint, eCapital Services has transacted business in this district and throughout the United States.

16.     Defendant **Joseph C. Bella**, **III**, is or has been a principal of one or more of the Corporate Defendants, including National Check Registry, Check Systems, Interchex Systems, American Mutual Holdings, Goldberg Maxwell, Mullins & Kane, Morgan Jackson, Buffalo Staffing, and eCapital Services, LLC.  He also is or has been a signatory to the bank accounts of

National Check Registry, Check Systems, Interchex Systems, American Mutual Holdings,

Goldberg Maxwell, Mullins & Kane, Morgan Jackson, eCapital Services, and Buffalo Staffing.

At times material to this Complaint, acting alone or in concert with others, he has formulated,

directed, controlled, had the authority to control, or participated in the acts and practices of the

Corporate Defendants, including the acts and practices set forth in this Complaint.  Defendant

Joseph Bella resides in this district and, in connection with the matters alleged herein, transacts

or has transacted business in this district and throughout the United States.

17.     Defendant **Diane L. Bella** is or has been a principal of one or more of the

Corporate Defendants, including Check Systems and Interchex Systems.  She has held herself

out as the President of Check Systems and the Vice President of Interchex Systems, and is a

signatory on the corporate bank account for Interchex Systems.  At times material to this

Complaint, acting alone or in concert with others, she has formulated, directed, controlled, had

the authority to control, or participated in the acts and practices of the Corporate Defendants,

including the acts and practices set forth in this Complaint.  Defendant Diane Bella, in

connection with the matters alleged herein, transacts or has transacted business in this district

and throughout the United States.

18.     Defendant **Luis A. Shaw** is or has been a principal of one or more of the

Corporate Defendants, including Check Systems.  He has held himself as the general manager of

Check Systems, and is a signatory to many of the corporate bank accounts, including accounts of

National Check Registry, Check Systems, American Mutual Holdings, and eCapital.  At times

material to this Complaint, acting alone or in concert with others, he has formulated, directed,

controlled, had the authority to control, or participated in the acts and practices of Defendants,

including the acts and practices set forth in this Complaint.  Defendant Shaw resides in this

district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

19.     Defendants are "debt collectors" as defined in Section 803(6) of the FDCPA, 15 U.S.C. § 1692a(6).  In addition, Defendants are not a "bad check enforcement program" excluded from the FDCPA under Section 818 of that statute.  15 U.S.C. § 1692p.

## COMMON ENTERPRISE

20.     Defendants National Check Registry, Check Systems, Interchex Systems, American Mutual Holdings, Goldberg Maxwell, Morgan Jackson, Mullins & Kane, Buffalo Staffing, and eCapital Services (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive and abusive acts and practices alleged below.  Defendants have conducted the business practices described below through an interrelated network of companies that have common officers, managers, business functions, employees, and boiler room locations, and that commingled funds.  Because these Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below.  Defendants Joseph Bella, Diane Bella, and Shaw have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.  Defendants Joseph Bella, Diane Bella, and Shaw are jointly and severally liable with the Corporate Defendants for the acts and practices alleged below.

## COMMERCE

21.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

### DEFENDANTS' DECEPTIVE AND ABUSIVE COLLECTION PRACTICES

22.     Since at least February 2010, and continuing thereafter, Defendants have used abusive and deceptive tactics to pressure consumers into making payments on purported debts, often with respect to loans that the consumers have challenged in part or in whole.  Defendants' core tactic has been to misrepresent that consumers have committed check fraud or another unlawful act related to purported debts.  Defendants have then claimed that consumers will face dire consequences—including arrest and imprisonment—unless the fraud charges are resolved. And Defendants claim that the only way to resolve the charges is by making an immediate payment on the debt over the phone.  Moreover, Defendants have compounded their threats and misrepresentations by refusing to provide consumers with statutorily-required disclosures and notices that would assist consumers in understanding and challenging the purported debts.

23.     The Defendants' tactics already have been the subject of an enforcement action by Plaintiff State of New York.  On October 30, 2013, Defendant Joseph Bella agreed to an Assurance of Discontinuance ("AOD") with the State of New York.  Defendant Joseph Bella agreed to the AOD individually and as a corporate officer of Defendants Check Systems, LLC, Interchex Systems, LLC, Goldberg Maxwell, LLC, Mullins & Kane, LLC, Morgan Jackson, LLC, and National Check Registry, LLC.  The AOD also binds these Defendants' agents, trustees, servants, employees, successors, heirs and assigns, or any other person under their direction and control, whether acting individually or in concert with others, or through any corporate or other entity or device through which the they have or are acting or conducting business, operating or doing business in New York State, including businesses in which they have any legal or beneficial interest.  As part of the AOD, Defendants agreed to abide by all

applicable federal and state laws, including the FDCPA.  Specifically, Defendants agreed to

refrain from:

- representing or implying that the Defendants or a creditor has commenced, or is about to commence, legal action against a consumer when that is untrue;

- representing or implying that a consumer has committed a crime or is subject to arrest;

- threatening to seize a consumer's assets or garnish a consumer's wages;

- communicating with consumers at the consumers' place of employment when the Defendants know, or have reason to know, that the employers do not permit such communications;

- discussing a consumer's alleged debt with third parties—such as the consumer's friends, non-spouse family members, or coworkers—without the consent of the consumer or the consumer's attorney, or unless otherwise permitted by law;

- communicating with third parties for any purpose other than acquiring location information, unless the Defendants have the consent of the alleged debtor or the alleged debtor's attorney, or unless otherwise permitted by law;

- communicating with third parties more than once, except as permitted by the FDCPA or other applicable law; and

- failing to provide consumers, within five (5) days of the initial contact, with the validation rights notice required by the FDCPA, 15 U.S.C. § 1692g.

24.    Defendants, however, have failed to abide by the AOD, and have continued to

employ a host of deceptive and abusive collection practices.  Shortly after agreeing to the AOD,

Defendants established a new consumer-facing entity—eCapital Services—and started to use

phone numbers with out-of-state area codes to contact consumers, in an apparent attempt to

evade further attention from state or federal law enforcement.  Under this new guise, Defendants'

main collection strategy has remained in place: alleging consumers have committed fraud, and

threatening imminent consequences including lawsuits, garnishment, arrest, or imprisonment.

Defendants also have continued making improper contacts with third parties, even going so far

as to tell consumers' friends, family members, or coworkers that the consumers are in legal trouble and are facing civil or criminal sanctions.

25.     Defendants have profited handsomely—both before and after entering into the AOD—from their combination of aggressive misrepresentations and a failure to comply with basic disclosure requirements.  Since February 2010, Defendants have collected and processed at least 8.7 million dollars in payments for purported debts.

### Defendants' False Threats that Consumers Are Facing Dire Consequences

26.     In numerous instances, Defendants have contacted a consumer by telephone and have asserted that the consumer committed check fraud or another fraudulent act.  Defendants frequently build on the claim that consumers have committed fraud by threatening dire consequences to consumers who do not make payments.  Specifically, Defendants have threatened to:

- sue consumers;

- have consumers arrested or imprisoned;

- have police or other law enforcement agents come to consumers' homes or places of employment to arrest the consumers or to serve the consumers with legal papers;

- garnish consumers' wages or place a lien on consumers' property; and

- contact the consumers' employers and tell the employers the consumers committed fraud or that the Defendants are going to garnish the consumers' wages.

27.     Defendants routinely represent that these consequences are in process or will happen in the immediate future, and that the only way for a consumer to prevent these consequences is to make an immediate payment.

28.     Defendants often give their alarming threats an aura of legitimacy by specifically

referencing the consumer's local court or law enforcement agency.  For example, Defendants told one consumer who lived in Washington State that they would have the "Washington County Police" issue a warrant for her arrest.  Similarly, Defendants told a consumer who was a member of the U.S. Armed Forces that they would bring an action against him under the Uniform Court of Military Justice.

29.     In truth and in fact, Defendants' threats are false.  The consumers have not committed check fraud and Defendants have no authority to file criminal charges against the consumers.  Similarly, Defendants have no authority to have consumers' arrested or imprisoned. Defendants also have lacked the authority or intention to file lawsuits against consumers or send a process server or law enforcement agent to serve papers on consumers.  And because Defendants lacked the authority or intention to file lawsuits against consumers, Defendants have additionally lacked the authority or intention to garnish consumers' wages or place liens on consumers' property.

**Defendants' False or Unsubstantiated Representations that Consumers Owe Debts**

30.     In numerous instances, Defendants have claimed that consumers have committed check fraud or another fraudulent act.  Often, Defendants claim that these purported fraudulent acts are related to a loan that the consumers owe.

31.     In numerous instances, consumers have inquired about the details of the alleged check fraud or fraudulent act, but Defendants have refused to discuss the basis for the allegations, or have stated that the consumers previously bounced a check when making payment on a debt.

32.     In many instances, when consumers have asked for more information about the underlying debt, the Defendants have refused to identify the source or said that the debt came

from a generic-sounding online creditor such as "Loans.com" or "Loan.com."

33.     In numerous instances, consumers have claimed that they have never heard of these creditors or asked for additional information about the debts.  In many instances, Defendants have responded to these challenges by telling consumers that the actual entity that provided the loan was a "subsidiary" of the generic-sounding purported creditor, and that Defendants could not provide the name of the subsidiary.  In other instances, Defendants have responded to consumers' challenges by reasserting the claim that the consumers committed an unlawful act.

34.     In numerous instances, Defendants have continued their collection efforts even after the consumers presented evidence that called into question the legitimacy of the debt, without investigating and verifying that the consumer in fact owes the debt in the amount claimed.

35.     For example, Defendants continued their collection efforts against one consumer who notified the Defendants that the purported debt would have been discharged in a bankruptcy proceeding.

36.     Other consumers obtained evidence from their banks or, in instances where the Defendants provided the name of an identifiable purported creditor, the purported creditors, which contradicted the Defendants' claims.

**Defendants Fail to Provide Statutorily-Required Notices and Disclosures**

37.     In numerous instances, Defendants have failed to provide consumers with basic information—including the Defendants' business name, that the call was an attempt to collect a debt, and that any information provided by the consumer would be used to collect a debt—during these calls.

38.     In numerous instances, Defendants also have failed to provide consumers within five days after the initial communication with a statutorily-required written notice—where the information was not contained in the initial communication and the consumer had not paid the debt—setting forth: (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer disputes the debt, the debt will be assumed valid; and (4) a statement that if the consumer disputes all or part of the debt in writing within 30 days, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector.  In numerous instances, Defendants have refused to provide consumers with this notice despite consumers' repeated requests, and as a result, consumers have not been informed about the statutory right to dispute the validity of a debt.

**Defendants' Unlawful Disclosure of Information to Third Parties**

39.     In numerous instances, Defendants have contacted third parties, including friends, family members, or co-workers of putative debtors.  In many instances, Defendants disclose information about a purported debt to these third parties.

40.     In some instances, Defendant have told third parties that putative debtors have committed check fraud, and that putative debtors are going to be arrested or imprisoned if a debt is not paid.

**Defendants' Unlawful Processing Fee Charges**

41.     In numerous instances, Defendants have added a "processing fee" of eight dollars onto each credit card payment that a consumer makes on a purported debt.

42.     The processing fee is not expressly authorized by agreement nor permitted by law.

## VIOLATIONS OF SECTION 5 OF THE FTC ACT

43.      Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

44.      Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

### Count I by Plaintiff FTC

### False Threats Regarding Consequences of Non-Payment

45.       In numerous instances in connection with the collection of purported consumer debts, Defendants have represented, directly or indirectly, expressly or by implication, that:

   a.      Defendants have filed, or intend to file, a lawsuit against a consumer;

   b.      Defendants are going to garnish a consumer's wages, levy a consumer's bank account, or seize a consumer's property; or

   c.      Defendants are going to have a consumer arrested or imprisoned.

46.       In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 45 of this Complaint,

   a.      Defendants have not filed, and do not intend to file at the time of the representation, a lawsuit against the consumer;

   b.      Non-payment of a purported debt will not result in the garnishment, attachment, or seizure of the consumer's wages or property; and

   c.      Defendants do not have the authority or intent to have the consumer arrested or imprisoned.

47.       Therefore, Defendants' representations as set forth in Paragraph 45 are false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act,

15 U.S.C. § 45(a).

## Count II by Plaintiff FTC

**False or Unsubstantiated Representations That Consumers Owe Debts in Part or in Whole**

48.    In numerous instances in connection with the collection of purported consumer debts, Defendants have represented, directly or indirectly, expressly or by implication, that:

   a.   A consumers has committed check fraud or another criminal act; or

   b.   A consumers owes a debt, in situations in which the consumer had previously told Defendants that he or she did not owe the debt that Defendants were attempting to collect.

49.    In truth and in fact, in numerous instances in which Defendants have made the representations set forth in paragraph 48, the representations have been false or have not been substantiated at the time the representations have been made.

50.    Therefore, Defendants' representations set forth in paragraph 48 constitute deceptive acts or practices in violation of section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE FDCPA

51.     In 1977, Congress passed the FDCPA, 15 U.S.C. §§ 1692 *et seq.*, which became effective on March 20, 1978, and has been in force since that date.  Section 814 of the FDCPA, 15 U.S.C. § 1692*l*, provides that a violation of the FDCPA shall be deemed an unfair or deceptive act or practice in violation of the FTC Act.

52.    Throughout this Complaint, the term "consumer" as defined in Section 803(3) of the FDCPA, 15 U.S.C. § 1692a(3), means "any natural person obligated or allegedly obligated to pay any debt."

53.      Throughout this Complaint, the term "debt" as defined in Section 803(5) of the FDCPA, 15 U.S.C. § 1692a(5), means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

54.      The term "location information" as defined in Section 803(7) of the FDCPA, 15 U.S.C. § 1692a(7), means "a consumer's place of abode and his telephone number at such place, or his place of employment."

## Count III by Plaintiff FTC

## Prohibited Communications with Third Parties

55.      In numerous instances, in connection with the collection of debts, Defendants have communicated with persons other than: the consumer; the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator; the consumer's attorney; a consumer reporting agency if otherwise permitted by law; the creditor; the attorney of the creditor; or the attorney of the debt collector.  In numerous instances, Defendants have made these communications for purposes other than acquiring location information about a consumer, without having obtained directly the prior consent of the consumer or the express permission of a court of competent jurisdiction, and when not reasonably necessary to effectuate a post-judgment judicial remedy, in violation of Section 805(b) of the FDCPA, 15 U.S.C. § 1692c(b).

## Count IV by Plaintiff FTC

## False, Deceptive, or Misleading Representations to Consumers

56.      In numerous instances, in connection with the collection of debts, Defendants, directly or indirectly, expressly or by implication, have used false, deceptive, or misleading

representations or means, in violation of Section 807 of the FDCPA, 15 U.S.C. § 1692e, including, but not limited to:

a. Falsely representing the character, amount, or legal status of a debt, in violation of Section 807(2) of the FDCPA, 15 U.S.C. § 1692e(2);

b. Falsely representing or implying that non-payment of a debt will result in the arrest or imprisonment of a person or the seizure, garnishment, or attachment of a person's property or wages, when such action is not lawful or when Defendants have no intention of taking such action, in violation of Section 807(4) of the FDCPA, 15 U.S.C. § 1692e(4);

c. Threatening to take action that is not lawful or that Defendants do not intend to take, such as filing a lawsuit, in violation of Section 807(5) of the FDCPA, 15 U.S.C. § 1692e(5);

d. Falsely representing or implying that a consumer has committed any crime or other conduct in order to disgrace the consumer, in violation of Section 807(7) of the FDCPA, 15 U.S.C. § 1692e(7);

e. Using a false representation or deceptive means to collect or attempt to collect a debt, or to obtain information concerning a consumer, in violation of Section 807(10) of the FDCPA, 15 U.S.C. § 1692e(10); and

f. Failing to disclose in the initial communication with a consumer that Defendants are debt collectors attempting to collect a debt and that any information obtained will be used for that purpose, in violation of Section 807(11) of the FDCPA, 15 U.S.C. § 1692e(11).

### Count V by Plaintiff FTC

### Unauthorized Charges

57.     In numerous instances, in connection with the collection of debts, Defendants have collected fees that are not "expressly authorized by the agreement creating the debt or permitted by law," in violation of Section 808(1) of the FDCPA, 15 U.S.C. § 1692f(1).

### Count VI by Plaintiff FTC

### Failure To Provide A Validation Notice

58.     In numerous instances, in connection with the collection of debts, Defendants have failed to provide consumers, either in the initial communication with a consumer or in a written notice sent within five days after the initial communication, with statutorily-required information about the debt and the right to dispute the debt in violation of Section 809(a) of the FDCPA, 15 U.S.C. § 1692g(a).

## VIOLATIONS OF NEW YORK STATE LAW

### Fraudulent and Deceptive Acts or Practices

59.     In numerous instances, in connection with the collection of debts, Defendants, directly or indirectly, have used false, deceptive, or misleading representations or means, including, but not limited to:

      a.      Falsely representing the character, amount, or legal status of a debt;

      b.      Continuing to collect on a debt after being informed that the consumer did not owe the debt without any reasonable basis for doing so;

      c.      Falsely representing or implying that non-payment of a debt will result in the arrest or imprisonment of a person or the seizure, garnishment, or attachment of a person's property,  wages or bank accounts, when such

action is not lawful or when Defendants have no intention of taking such action;

d.   Threatening to take action that is not lawful or that Defendants do not intend to take, such as filing a lawsuit;

e.   Falsely representing or implying that a consumer has committed any crime or other conduct; and

f.   Using a false representation or deceptive means to collect or attempt to collect a debt, or to obtain information concerning a consumer.

## Count VII by Plaintiff State of New York

60.   N.Y Executive Law, § 63(12) empowers the Attorney General to seek restitution and injunctive relief when any person or business entity has engaged in repeated fraudulent or illegal acts.

61.   Defendants practices as described in paragraph 59 constitute repeated fraudulent acts, or demonstrate persistent fraud in the carrying on, conducting or transaction of business, in violation of Executive Law § 63(12).

## Count VIII by Plaintiff State of New York

62.   N.Y. General Business Law § 349 provides that  "[d]eceptive acts or practices in the conduct of any business [...] in this state are hereby declared unlawful."

63.   Defendants practices as described in paragraph 59 constitute deceptive acts or practices in violation of N.Y. General Business Law § 349.

## Count IX by Plaintiff State of New York

### Violation of New York State Debt Collection Law

64.     N.Y. General Business Law § 601 sets forth a list of prohibited debt collection practices.  In numerous instances, Defendants have engaged in debt collection practices prohibited by General Business Law § 601 including the following:

a.     Knowingly collecting, attempting to collect, or asserting a right to any collection fee, attorney's fee, court cost or expense when such charges were not justly due and legally chargeable against the debtor in violation of General Business Law § 601(2);

b.     Communicating or threatening to communicate the nature of a claim to the debtor's employer prior to obtaining final judgment against the debtor in violation of General Business Law § 601(4);

c.     Disclosing or threatening to disclose information concerning the existence of a debt known to be disputed by the debtor without disclosing that fact in violation of General Business Law § 601(5);

d.     Threatening any action which the Defendants in the usual course of their businesses did not in fact take in violation of General Business Law § 601(7); and

e.     Claiming, or attempting or threatening to enforce a right with knowledge or reason to know that the right does not exist in violation of General Business Law § 601(8).

**COUNT X by Plaintiff State of New York**

**Violation of Assurance of Discontinuance**

65.     On October 30, 2013, Defendant Joseph Bella executed an Assurance of Discontinuance ("AOD") with the Office of the Attorney General.  Defendant Joseph Bella executed the AOD individually, and as the owner of Check Systems, Interchex Systems, Goldberg Maxwell, Mullins & Kane, Morgan Jackson and National Check Registry.  The AOD also binds these Defendants' agents, trustees, servants, employees, successors, heirs and assigns, or any other person under their direction and control, whether acting individually or in concert with others, or through any corporate or other entity or device through which the they have or are acting or conducting business, operating or doing business in New York State, including businesses in which they have any legal or beneficial interest.  An AOD is an agreement to settle an investigation permitted by Executive Law § 63(15) in lieu of the Office of the Attorney General filing a civil action or proceeding against the target of the investigation.

66.     By signing the AOD, Defendant Joseph Bella agreed that he and his companies would abide by all applicable federal and state laws, including but not limited to the FDCPA. Specifically, Defendant Joseph Bella agreed that he would not:

   a.     communicate with alleged debtors at their places of employment when the debt collectors know, or have reason to know, that the employers do not permit such communications;

   b.     discuss alleged debtors' debts with third parties without the consent of the alleged debtor or his/her attorney or unless otherwise permitted by law;

    c.      communicate with third parties for any purpose other than acquiring location information without the consent of the alleged debtor or his/her attorney or unless otherwise permitted by law;

    d.      communicate with third parties more than once, except as permitted by the FDCPA or other applicable law;

    e.      represent or imply that the collector is acting on behalf of an attorney when that is untrue;

    f.      represent or imply that the collector is affiliated with a law enforcement agency, a court or state or local agency;

    g.      represent or imply that they or a creditor has commenced, or is about to commence, legal action against a consumer when that is untrue;

    h.      threaten to revoke a consumer's driver's license;

    i.      represent or imply that the consumer has committed a crime or is subject to arrest; or

    j.      threaten to seize a consumer's assets or garnish a consumer's wages.

67.     In numerous instances in connection with the collection of debts, as set forth in this Complaint, Defendants Joseph Bella and the debt collection operation that has included Check Systems, Interchex Systems, Goldberg Maxwell, Mullins & Kane, Morgan Jackson and National Check Registry, violated the FDCPA, the Federal Trade Commission Act, N.Y. Executive Law, § 63(12), and N.Y. GBL §§ 349 and 601.

68.     As part of the AOD Defendant Joseph Bella also agreed, for a three year period, to provide the OAG with notice in writing within 30 days after he incorporates a new debt collection business, or after any of his debt collection companies start doing business under a

new name.

69.    On December 6, 2012, the OAG took the sworn statement of Defendant Joseph

Bella, who testified that he did not have an interest in any consumer debt collection company

apart from Check Systems, LLC, Interchex Systems, LLC, Goldberg Maxwell, LLC, Mullins &

Kane, LLC, Morgan Jackson, LLC, and National Check Registry, LLC.  In agreeing to the AOD,

the OAG specifically stated that it was relying on the factual representations made by Defendant

Joseph Bella.

70.    In fact, Defendant Joseph Bella had an undisclosed interest in a company called

Consumer Check Reporting, LLC, which was filed with the N.Y. Department of State on June

15, 2012, about six months before Defendant Joseph Bella's sworn statement.

71.    In or around March 11, 2014, Defendant Joseph Bella began operating part of his

debt collection business under the name eCapital Services, LLC.  On June 15, 2014, Consumer

Check Reporting, LLC changed its name to eCapital Services, LLC.

72.    Defendant Joseph Bella did not disclose to the OAG his interest in Consumer

Check Reporting, LLC, nor did he provide the OAG with written notice that Consumer Check

Reporting, LLC had changed its name to eCapital Services, LLC.  Defendant Joseph Bella also

did not disclose that he was operating eCapital Services, LLC.

73.    By reason of the foregoing, Defendant Joseph Bella and his companies have

breached the agreement with the OAG as set forth in the Assurance of Discontinuance.

## CONSUMER INJURY

74.    Consumers have suffered and will continue to suffer substantial injury as a result

of Defendants' violations of the FTC Act, the FDCPA, N.Y. Executive Law § 63(12), and N.Y.

General Business Law Articles 22-A and 29-H.  In addition, Defendants have been unjustly

enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

75.      Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and Section 814(a) of the FDCPA, 15 U.S.C. § 1692*l*(a), empower this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

76.      N.Y. Executive Law § 63(12) empowers the Attorney General to seek injunctive relief, restitution, damages, disgorgement and other relief when any person or business entity has engaged in repeated fraudulent or illegal acts, or has otherwise demonstrated persistent fraud or illegality in the carrying on, conducting or transaction of business.  N.Y. General Business Law § 349 prohibits deceptive business practices and empowers the Attorney General to seek injunctive relief, restitution and civil penalties when violations occur.  General Business Law Article 29-H, § 602 empowers the Attorney General to bring an action to restrain any violation of Article 29-H, New York's Debt Collection Procedures.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs FTC and the State of New York, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), Section 814(a) of the FDCPA, 15 U.S.C. § 1692*l*(a), N.Y. Executive Law § 63(12), and N.Y. General Business Law §§ 349, 350-d and 602(2), and the

Court's own equitable powers, request that the Court:

A.      Award Plaintiffs such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access to business premises, and appointment of a receiver;

B.      Enter a permanent injunction to prevent future violations of the FTC Act, the FDCPA, N.Y. General Business Law Articles 22-A and 29-H and Executive Law § 63(12), by Defendants;

C.      Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, the FDCPA, N.Y. General Business Law Articles 22-A and 29-H and Executive Law § 63(12), including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and disgorgement of ill-gotten monies;

D.      Pursuant to N.Y. General Business Law § 350-d, impose a civil penalty of $5,000 for each violation of General Business Law Article 22-A; and

E.      Award Plaintiffs the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: June 23, 2014                    Respectfully submitted,

                                        JONATHAN E. NUECHTERLEIN
                                        General Counsel, Federal Trade Commission


                                        _____
                                        COLIN HECTOR
                                        THOMAS J. WIDOR
                                        NIKHIL SINGHVI
                                        Federal Trade Commission
                                        600 Pennsylvania Ave., N.W.
                                        Washington, D.C. 20580
                                        Telephone: 202-326-3376 (Hector)
                                        Telephone: 202-326-3039 (Widor)
                                        Telephone: 202-326-3480 (Singhvi)
                                        Facsimile: 202-326-3768
                                        Email: chector@ftc.gov; twidor@ftc.gov;
                                               nsinghvi@ftc.gov


                                        ERIC T. SCHNEIDERMAN
                                        Attorney General of the State of New York


                                        _____
                                        JAMES M. MORRISSEY
                                        Assistant Attorney General
                                        350 Main Street, Suite 300A
                                        Buffalo, NY 14202
                                        Telephone: (716) 853-8471


                                        Attorneys for Plaintiff