UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

FEDERAL TRADE COMMISSION and
PEOPLE OF THE STATE OF NEW
YORK,

                        Plaintiffs,

v.

NATIONAL CHECK REGISTRY, LLC,
*et al.*,
                        Defendants.
_____

**REPORT AND RECOMMENDATION**

14-CV-00490-RJA-JJM

          This case was referred to me by Hon. Richard J. Arcara for supervision of all pretrial proceedings, including the preparation of a Report and Recommendation on dispositive motions [48].[1]  Before me is the motion of the Receiver, Patricia M. Hamill, Esq., for approval of final distribution of receivership assets, approval and payment of the Receiver's fees and expenses, and for authorization to perform certain case-closure activities [109].  A hearing concerning that motion was held on May 11, 2016 [114]. For the following reasons, I recommend that, as modified, the motion be granted.

**BACKGROUND**

          Plaintiffs commenced this action on June 23, 2014, seeking various forms of relief pursuant to section 13(b) of the Federal Trade Commission Act, 15 U.S.C. §53(b), section 814 of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, and other federal and state laws for allegedly deceptive trade practices by defendants.  Complaint [1].  On June 24, 2014 this court appointed the Receiver and authorized her to assume control of the corporate defendants, secure

_____

[1]     Bracketed references are to the CM/ECF docket entries.

their property and manage their assets [14]. *See also* July 10, 2014 Stipulated Preliminary Injunction Order [35].

Having identified and liquidated the assets and addressed outstanding liabilities of the receivership entities, the Receiver now believes that the liquidation process is substantially complete. Pursuant to this court's October 16, 2015 Stipulation and Final Order for Permanent Injunction and Settlement of Claims [91], she has submitted a proposal for final distribution of receivership assets. *See* Kent Declaration [109-1]. As confirmed at the May 11 hearing, the parties and claimants have generally consented to that proposal (as modified – see Kerman Declaration [112]) on the following basis, calling for payment of:

- $532.32 to the State of New York, in satisfaction of the state tax liability of defendant Check Systems, LLC;

- $17,993.03 to employees of Check Systems, LLC and eCapital Services, LLC, representing payment in full for wages earned the week ending June 21, 2014;

- $60,852.84 to the Receiver's local counsel, Hodgson Russ, LLP, representing approximately 75% of fees incurred through April 2016;

- $75,000.00 to the Receiver's lead counsel, Conrad O'Brien, PC, representing approximately 20% of fees incurred through April 2016;

- $75,000.00 to the Receiver's accountants, Smart Devine (now known as Marcum LLP), representing approximately 41% of fees incurred through April 2016;

- $30,002.00 to Alisa Rock, the client of Larry Kerman, Esq., representing approximately 26% of her $116,020.00 judgment against Check Systems, LLC;

- $1,499.00 to Casie Meyer, the client of Robert Amador, Esq., representing approximately 26% of her $5,790.90 judgment against Check Systems, LLC; and

- $1,103.65 to Lippes Mathias Wexler Friedman LLP, in connection with legal services provided to Check Systems, LLC.

The only disputed aspect of the Receiver's proposal relates to treatment of the $9,833.62 New York State unemployment tax liability of defendant Buffalo Staffing, Inc. The Receiver proposes to pay New York State the sum of $1,750.37, representing penalties and interest for late payment of the tax due, "based on the fact that Buffalo Staffing was not a Receivership entity for the majority of the time period in which this liability was incurred, however, notice thereof had been provided to both Buffalo Staffing and the Receiver and at a point in time where responsibility for the payment was unclear." Kent Declaration [109-1], ¶67.

In opposing that recommendation, defendant Joseph C. Bella III, the president and sole shareholder of Buffalo Staffing, argues that the receivership froze Buffalo Staffing's bank account, making it impossible to pay the tax liabilities when due, and suggesting that in fairness the Receiver should pay the entire liability. *See* Bella Declaration [111]. The Receiver responds that Buffalo Staffing's tax liability "was incurred based on wages paid to employees well-prior to Buffalo Staffing entering the Receivership. Accordingly, the Buffalo Staffing Tax Liability has always been independent of the Receivership, and would have existed whether or not Buffalo Staffing had been placed in Receivership". Bullock Declaration [113], ¶¶9-10.

"Despite the underlying tax liability having been incurred pre-Receivership and becoming due and owing post-Receivership, the Receiver has proposed to pay the additional costs relating to penalties and interest due to the untimely filing of the Buffalo Staffing Form NYS-45 for the 2nd quarter of 2014. Although it is believed that notice of the outstanding tax liability was provided to representatives of both parties sometime prior to February 2016, the Receiver made her proposal in hopes of reaching a timely and equitable resolution of the matter.

Any other proposed resolution - including specifically that suggested in the Bella Declaration that the Receivership fund the Buffalo Staffing Tax Liability - would be improper as the Buffalo Staffing Tax Liability is not a liability of the Receivership, and the Receivership's payment of such would provide a windfall to Buffalo Staffing." Id., ¶¶18-19.

"The district court has broad powers and wide discretion to determine relief in an equity receivership." Skaff v. Progress International, 2014 WL 5454825, *9 (S.D.N.Y. 2014); S.E.C. v. Elliott, 953 F.2d 1560, 1566 (11th Cir.1992). In the exercise of that discretion, I find that the Receiver's proposals for payment, as modified, represent a fair and equitable distribution of the assets of the receivership, and recommend that they be approved. In addition, I recommend that the Receiver be authorized to perform the limited remaining tasks necessary to close this proceeding, namely:

- filing all necessary tax returns (Kent Declaration [109-1], ¶89);

- retaining receivership records for a period of two years following the entry of an Order closing the receivership, and disposing of the records thereafter in the manner described by the Receiver (id., ¶90);

- performing any ancillary and/or administrative tasks necessary to close the receivership, and maintaining a small reserve (currently valued at approximately $21,000) to fund the case closure tasks and/or to cover outstanding or unknown receivership liabilities (id., ¶¶91-94); and

- filing a final accounting within 120 days of the date of entry of an Order approving this Report and Recommendation.

Finally, I wish to commend the Receiver, her attorneys, accountants and staff for diligently discharging their duties when it was clear from the outset of this proceeding that full compensation for their efforts was unlikely.

**CONCLUSION**

For these reasons, I recommend that the Receiver's motion [109], as modified, be granted as set forth herein. Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by June 23, 2016 (applying the time frames set forth in Fed. R. Civ. P. ("Rules") 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision".  Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance.  Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

-6-

Dated:  June 6, 2016

                                         /s/ Jeremiah J. McCarthy  
                                         JEREMIAH J. MCCARTHY  
                                         United States Magistrate Judge